## CHAMP SPRING CO. v. UNITED STATES.
### No. 8299.

District Court, E. D. Missouri, E. D.
Dec. 18, 1929.

Fordyce, Holliday & White, of St. Louis, Mo., for plaintiff.

Louis H. Breuer, U. S. Atty., of Rolla, Mo., and Claude M. Crooks, Asst. U. S. Atty., of St. Louis, Mo.

FARIS, District Judge.

Plaintiff sues defendant United States to recover the sum of $22,975.76 paid to a former collector, now out of office, as an alleged excise tax provided by law to be levied on any manufacturer of springs for automobiles.

The controlling facts are few and simple. Originally the money in dispute, or a sum equal thereto, was paid by the plaintiff to such former collector as and for taxes due from plaintiff to defendant on automobile springs made and sold by plaintiff. Later, and of course after such taxes were paid, the then Commissioner of Internal Revenue made a ruling, pursuant to which plaintiff made an application for and was granted a refund of the whole amount of such excise taxes paid by plaintiff. In passing it may be said that this ruling was to the effect that the business of plaintiff was not such as to bring it within the purview of the statute pursuant to which the taxes had been exacted. Of course this ruling had to do with a mixed question of law and fact; the fact being as to the precise nature of the business in which plaintiff was engaged, and of the precise nature of the springs made and sold by plaintiff. Thereafter the Commissioner of Internal Revenue made another ruling in the matter, which in the last analysis rendered the collection of these taxes lawful. In other words, the construction last put by the Commissioner of Internal Revenue upon the law and the facts was to the effect that plaintiff was liable to the defendant for the sum in taxes which defendant had erroneously repaid to plaintiff, on the theory that

there existed no such liability. Thereupon a reassessment was made against plaintiff for all such taxes not then barred by statutory limitation, and under threat of distraint plaintiff paid to the collector of internal revenue, under protest, as it is claimed, the sum here in dispute, and plaintiff now sues the defendant to recover such sum.

It is not very strenuously disputed that under the facts and under the law when properly construed plaintiff was liable to pay this tax, and therefore, if defendant had retained the money when it had it, plaintiff could not in any action have recovered such money. But defendant, through an erroneous interpretation of the law by the Commissioner, and also, as is now contended by defendant, a misunderstanding as to the nature of plaintiff's business, and as to the nature and use of the springs made by plaintiff, put it in the power of plaintiff to get this money back by way of a refund. Neither is it very strongly disputed that the collector had no legal right to distrain in order to enforce the collection of money erroneously paid as a refund by defendant to plaintiff.

Clearly, I think, it was the duty of defendant to have brought a plenary action against plaintiff to recover back the amount of the erroneous refund. Such actions have been sustained as proper, Talcott v. U. S. (C. C. A.) 23 F.(2d) 897; Kelley v. U. S. (C. C. A.) 30 F.(2d) 193, and in one case, in fact, precisely on all fours with the case at bar, United States v. Standard Spring Manufacturing Co. (D. C.) 23 F.(2d) 495, so far, at least, as concerns the right of the United States to sue in a plenary action for money refunded, which money had originally been paid as a manufacturer's excise tax on automobile springs. But defendant's collector and Commissioner, deeming the matter one involving a tax, collected summarily from plaintiff by the threat of distraint. It is not necessary to a decision of the case now, and may be therefore wholly academic, but I am clearly of the opinion that section 154, tit. 26, U. S. C. (26 USCA § 154) did not apply to the situation existing when plaintiff under threat of distraint paid the money in dispute to the collector. I am fully mindful of the many decisions supporting the language of section 154, supra, but no one can successfully contend that the collector can merely by his ipse dixit make that a tax which clearly bears no resemblance whatever to a tax. True it is that, if the obligation is seemingly a tax, and is laid by law, no injunction will lie to defeat or impede collection, even though the law be constitutionally invalid or void on any account. But if it is a mere penalty, and not a tax (Lipke v. Lederer, 259 U. S. 557, 42 S. Ct. 549, 66 L. Ed. 1061), or if it is a claim of the United States clearly and plainly, as here, enforceable only by a plenary action, I can see no reason why injunction will not lie, or in this case would not have lain, to prevent collection by distraint. However true in the domain of literature may have been the assertion of Squeers, the proprietor of Dotheboys Hall, that "there is no law to prevent a man from calling his house a hall if he wants to," I do not understand that the rule prevails at law in the case of a federal collector of internal revenue. But, as said, since no injunction was sought, and since the money was exacted from plaintiff by threat of distraint, no necessity exists to absolutely rule on the controversial question of whether collection could have been prevented by injunction. I think the questions here presented are even simpler than that. I find:

(a) That plaintiff was in fact liable under the law and the facts to pay the manufacturer's excise taxes originally assessed against it;

(b) That plaintiff did pay such taxes;

(c) That having paid it, the collector of internal revenue erroneously ruled that plaintiff was not liable under the facts and the statute relied on to pay such taxes;

(d) That after this ruling plaintiff sought and obtained from defendant's officers a refund of the taxes so paid by it in the sum of (including interest) about $35,-000;

(e) That some fifteen months after the erroneous ruling of the Commissioner of Internal Revenue as to plaintiff's nonliability to pay this tax, and shortly after the refund of the tax to plaintiff, the Commissioner of Internal Revenue changed his ruling, holding then in effect that plaintiff was liable;

(f) That a so-called reassessment was then made or attempted against plaintiff by the Commissioner of Internal Revenue of all taxes save some $12,000 thereof, as to which it was deemed the statute of limitations barred action or reassessment, and such reassessment list was put into the hands of the collector of this district for collection; and

(g) That on threat of distraint, as already said, plaintiff paid the sum of $22,-975.76 here in controversy.

If it be conceded as to the taxes that plaintiff paid them, and therefore it cannot be made to pay them again by the expedient of a reassessment, yet the fact still remains that a sum larger in amount than the identical taxes paid by plaintiff was erroneously paid as a refund by the defendant to plaintiff. This sum, however, defendant got back into its coffers by the threat of distraint against plaintiff, in the event that plaintiff did not pay, so plaintiff paid, but wants its money back because the reassessment was unauthorized, since the taxes had once been paid. I am not able to escape the conclusion that plaintiff's contention leaves out of the legal equation the ultimate situation. Certainly this is so upon the view which I take that plaintiff was liable to pay these taxes. That finding being made against plaintiff, the result is that it paid back to the defendant money which defendant's officers had illegally refunded to plaintiff. It may be conceded for the sake of the argument that the reassessment was illegal, and that the collector's summary collection from plaintiff was illegal, but the fact remains that defendant got back into its hands its own money, which its officers had erroneously paid to plaintiff. It would, I think, be a vain and futile thing in this situation to require defendant to pay this money back to plaintiff, and then sue plaintiff to recover it as and for an erroneous refund. It is not a tax at all that is in controversy. What is in controversy is a sum of money refunded by error to plaintiff, and by defendant gotten back from plaintiff by methods which, if the vernacular may be resorted to, were not strictly "according to Hoyle."

It has been held that money of the United States may be recovered from the recipient when such money has been paid out by its officers through mistake, either of law or fact. U. S. v. Standard Spring Mfg. Co. (D. C.) 23 F.(2d) 495; Sutton v. U. S., 256 U. S. 575, 41 S. Ct. 563, 65 L. Ed. 1099, 19 A. L. R. 403; Wisconsin, etc., Railroad Co. v. U. S., 164 U. S. 190, 17 S. Ct. 45, 41 L. Ed. 399; Talcott v. U. S. (C. C. A.) 23 F.(2d) 897; United States v. Burchard, 125 U. S. 176, 8 S. Ct. 832, 31 L. Ed. 662.

If, then, as the above cases hold, such money so erroneously paid may be recovered, it of course follows that, if the United States got back into its coffers its own money, which its officers had theretofore erroneously refunded to plaintiff, it may keep such money, so, without following the many refinements of point and argument in the briefs and in the contentions of the respective parties, and without deciding many of the points mooted, because I deem it unnecessary to do so, I am constrained to find for defendant and against plaintiff. Judgment accordingly will be entered for defendant that it go hence without day and have its costs.